**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DONALD M. GINDY, SB# 45228
E-Mail: Donald.Gindy@lewisbrisbois.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for VBConversions LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA- WEST REGION

| | |
|---|---|
| VBConversions LLC A California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>Alere, Inc., a Delaware Corporation; Matria Healthcare, Inc., a Delaware Corporation; Scott Daniel, an individual; Erik Frelund, an individual; Megan Cook, an individual; DOES 1-10, Inclusive.,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>1. **COPYRIGHT INFRINGEMENT;**<br>2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>3. **VICARIOUS COPYRIGHT INFRINGEMENT;**<br>4. **VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, §1201(a);**<br>5. **REQUEST FOR INJUNCTIVE RELIEF.**<br><br>*Demand for jury trial* |

COMES NOW, Plaintiff, VBConversions LLC, a California limited liability company, which alleges that Defendants Alere, Inc., a Delaware corporation, Matria Healthcare, Inc., a Delaware corporation, and Scott Daniel, Erik Frelund and Megan Cook, all individuals, are liable to it for copyright infringement, contributory copyright infringement, vicarious copyright infringement and violation of the Digital Millennium Copyright Act, §1201(a) in connection with Plaintiffs

4827-5171-8934.1

1

COMPLAINT

copyrighted software entitled VB.Net to C# Converter. ("C#" is pronounced "C Sharp".) This action is based upon a federal question and seeks damages and injunctive relief upon Defendants' unauthorized access, copying and usage of Plaintiff's copyrighted software.

## JURISDICTION AND VENUE

1. This action arises under the Copyright Act of the United States 17 U.S.C. §101 and §501, et seq. and the Digital Millennium Copyright Act, 17 U.S.C. §1201(a). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338(a). Jurisdiction is further founded upon the Defendants' acceptance of a licensing agreement in connection with their use of VB.Net to C# Converter, whereby the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) & §1400(a). Venue is also proper as the result the Defendants' acceptance of the above-mentioned licensing agreement's forum-selection clause which designates the County of Los Angeles, State of California, as the location for hearing any dispute arising in relation to use of the program.

## PARTIES

3. VBConversions LLC (hereinafter "VBC") is a California limited liability company, with its principal place of business located in Santa Monica, California. VBC is a software developer and engages in the licensing of its software

4827-5171-8934.1

2
COMPLAINT

products on the Internet.

4. Plaintiff is informed and believes and thereon alleges that Alere, Inc. ("Alere") is a Delaware corporation, with its principal place of business located at 51 Sawyer Road, Suite 200, Waltham, MA 02453. On information and belief, Plaintiff alleges that Alere is a provider of healthcare and healthcare management.

5. Plaintiff is informed and believes and thereon alleges that Matria Healthcare Inc. ("Matria"') is a Delaware corporation, with its principal place of business located at 1850 Parkway PL SE, Marietta, Georgia, 30067. On information and belief, Plaintiff alleges that Matria develops health and disease management programs and high-risk pregnancy management programs and services. Plaintiff is informed and believes and thereon alleges that, at all times mentioned herein, Matria was a wholly owned subsidiary corporation to co-defendant Alere, Inc.

6. Plaintiff is informed and believes and thereon alleges that all relevant times, Erik Frelund, was an employee of Alere acting within the course of his employment with the title of computer programmer.

7. Plaintiff is informed and believes and thereon alleges that all relevant times, Scott Daniel, was an employee of Alere acting within the course of his employment with the title of Vice President of Application Development.

8. Plaintiff is informed and believes and thereon alleges that all relevant times, Megan Cook, was an employee of Alere acting within the course of her employment with the title of executive assistant to Scott Daniel.

4827-5171-8934.1

3
COMPLAINT

9. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants, and each of them, have engaged in and continue to engage in the purchase and/or sale of goods and services within the County of Los Angeles, State of California and have generally directed their activities at California.

10. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES I through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the Defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agents and servants or joint venturers/ partners-in-concert of the other Defendants, and acted within the course and scope of said agency and employment or within the parameter of their agreement.

11. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, Defendants and DOES 1-10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.

## GENERAL ALLEGATIONS
### Background

12. Visual Basic (VB) is a computer programming language developed and

sold by Microsoft Corporation since as early as 1991. Historically, it has been among the most popular programming languages for use in business programming and has long had one of the largest user bases of any programming language. There is, therefore, a vast amount of software that has been developed over the years in VB. Many of these VB programs are of significant complexity and size.

13. In or around 2001, Microsoft Corporation introduced an "evolved" version of Visual Basic called Visual Basic .Net (VBN) oriented towards modern, Internet programming tasks.

14. Since 2000, however, the language C#, also developed by Microsoft Corporation (but adopted as an international standard) has taken the place of VB for much business programming, particularly that oriented toward the Internet. C# is intended to be a simple, modern, general-purpose, programming language. The language is intended for use in developing software components suitable for deployment in many different environments. For instance, while VB and VBN are largely limited to the Windows operating system, C# compilers exist for most major computer operating systems, including Mac OS, Linux, Windows, Solaris, etc. C# is suitable for writing applications for both hosted and embedded systems.

**The Copyrighted Software**

15. Because of the large body of legacy software existing in VB and VBN, companies seeking to modernize their software often find that it is most practical to undertake a process of converting their existing VBNBN code to C#. Paying a

1 programmer to make the conversion line-by-line by hand can be extremely costly.

16. In particular, Plaintiff is informed and believes and thereon alleges that a skilled computer programmer having substantial familiarity with both VB/VBN and C# and working purely by hand, could, at best, convert 100 lines per hour from VB/VBN to C#.

17. In light of this challenge, plaintiff has developed the Program, VB.Net to C# Converter, to automate the conversion process. The program is designed to enable converting from VB to C# at a significantly lower cost and much more quickly.

20. Version 2.0, of VB.Net to C# Converter ("the Copyrighted Software.") was registered with the Register of Copyrights in 2006, and was assigned registration TX 0006425720. A true and correct copy of the registration certificate is attached hereto as *Exhibit* "A," and is incorporated by reference.

**The Licensing of the Copyrighted Software**

21. VBC licenses the Copyrighted Software online at the Internet web site vbconversions.com.

22. When the Copyrighted Software is downloaded and run, the user must affirm an End User Licensing Agreement ("EULA") before the program can be used. A true and correct copy of the EULA is attached hereto as *Exhibit* "B," and is incorporated by reference.

23. In spite of the complexity of the system, the Copyrighted Software is

1  licensed under extremely reasonable terms. VBC employs the so-called shareware
2  model, whereby an interested user is permitted to download a time and line limited
3
4  version of the Copyrighted Software in order to test it to see if it is suitable for his or
5  her needs.
6
       25.    As initially downloaded, the Copyrighted Software may be used for up
7
8  to fifteen (15) days. When this time limit is reached, the Copyrighted Software is
9  disabled and ceases to function. Further, before it is unlocked, the Copyrighted
10 Software will only function to convert VB/VBN projects consisting of up to two-
11
12 thousand (2,000) lines of code. It will not process larger projects. (Shareware
13 programs offered in such time or function limited forms are often referred to as
14 "trialware" or "demoware.") (See *37 C.F.R. § 201.26*)
15
       26.    If the user is satisfied with the Copyrighted Software and wishes to
16
17 continue to use it beyond the time and scope limitations applied to free use, the
18 EULA requires the user to apply for a full-use license by paying the standard market
19
20 fee. At that point, the user is provided an "unlock code" (or key) that removes the
21 restrictions in the Copyrighted Software.
22
   **Cracking and Warez Sites and Unlicensed Use**
23
       27.    Unfortunately, a broad array of so-called "cracking sites" have
24
25 appeared on the internet that are capable of generating and providing users with
26 unauthorized unlock codes for the Copyrighted Software and many other programs
27
28 offered in the trialware/demoware model. These sites supply the decryption of

registration keys to developers' software and enable fraudulent registration codes to be used in order to gain unlicensed unlimited access to the subject program.

28. A similar number of so-called "warez sites" have sprung up offering already-cracked copies of copyrighted programs for download and use.

29. Despite its best efforts, VBC has not been able to stem the tide of unscrupulous users who have used these means to gain unauthorized, unlicensed and unlimited access to the Copyrighted Software.

30. Such users have used the Copyrighted Software without license (and without any payment to VBC) to quickly convert vast amounts of VB/VBN code to the more modern and desirable C#. Such users thereby obtain significant financial benefit through their illicit, unlicensed infringing use.

**Collection of Information Concerning Infringement**

31. In self-defense, VBC has adopted a tracking system whereby the Copyrighted Software reports its use to VBC's servers and to servers maintained by a third-party registration-tracking company, Hitek Software LLC of Goleta, CA ("Hitek").

32. VBC is, thereby, able to identify the date and time of the unlicensed use, the public and private IP address of the computer on which the unlicensed use occurs, the false key used to unlock the software, the identity of the user of that computer, the owner or organization responsible for operating the computer, and other data which is integral to proof of infringement.

33. The collection of this usage data by the Copyrighted Software and its transmission to VBC and Hitek is acknowledged and affirmed by the user as part of the EULA when the Copyrighted Software is first used.

## SPECIFIC ALLEGATIONS OF DEFENDANTS' INFRINGEMENT

34. Plaintiff has collected information demonstrating that Defendants have used the Copyrighted Software with a fraudulent unlock code to generate more than Eight Hundred and Forty Seven Thousand (847,000) lines of C# code.

35. The Program proves its invaluable nature to programmers in the following example. Even if a programmer could sustain a 100-line per hour manual translation rate over a long period, it would take more than 8,470 programmer hours to accomplish such a conversion. The average worker at 40 hours per week would accumulate about 2,000 hours per year (with a two week vacation). Thus, it would require more than four years to do the same task, starting from scratch, that plaintiff's program can accomplish in a matter of hours.

36. The specific information related to the unlicensed infringing use is set forth as follows.

### The Group of Infringements

37. On November 23, 2010, at 1:05 p.m., Version 2.29 of the software was installed on a computer owned by defendant, Alere. The computer name is **CORPLEGAL_4201**. The Public IP is noted as 65.241.51.2; the Private IP is 10.80.33.37. The user is named "mcook." On this date and at the above time, the

End User License Agreement was accepted by mcook.

38. At 1:09 p.m., on the same date as above, mcook illegally registered for the software. The illegal registration took the form of introducing a false code into the Trial version, to wit, PZ45C-SP9AX-1EKDZ-WWVYN-TY9SR. Plaintiff believes mcook is defendant Megan Cook as this defendant entered three elements of identity required by VBC. That is, Ms. Cook herself entered the Registration Name – Alere; Registration Organization – Alere; and, Registration email – megan.cook@alere.com.

39. Also on November 23, 2010, at 2:03 p.m., another individual affirmed the EULA and installed the same program version, 2.29, on another Alere computer. This machine was titled **ATLRMDSTAGING1**. The Public IP is the same as above; the Private IP indicates a different network, to wit, 192.168.76.94. The user is named "erfrelund." Plaintiff is informed and believes and thereon alleges that the user is co-defendant Erik Frelund.

40. The American Registry of Internet Numbers (ARIN) confirms that both **CorpLegal_4201** and **ATLRMDSTAGING1** have Public IPs assigned to defendant Matria Healthcare, Inc. A copy of the ARIN report is attached hereto and incorporated by reference as *Exhibit* "C."

41. Also on November 23, 2010, at 12:12 p.m., the program was installed on still another computer called **ERIK-PC** and the EULA was accepted by the user. The Public IP is noted as 71.298.34.99; the Private IP as 10.221.1.100.

42. On November 23, 2010, at 2:39 p.m., an illegal conversion was completed on **ERIK-PC.** The user name is Erik, but the registration name and registration email indicated Scott Daniel and scott.daniel@alere.com. The latter information came from the user himself. He also indicated that the Registration Organization is Alere.

43. The **ERIK-PC** converted VB into 513 C# lines. The vb project to which the conversion is dedicated is called simply "WebApplication." A few seconds later it converted 181 lines to C#. At 2:40 p.m., it converted VB into 57,955 lines of C# for the same project. At 2:41 p.m., it converted 8,087 more. Then, also at 2:41, it converted another 1,448 lines for a vb project entitled "WebControlCaptcha."

44. On November 23, 2010, at 2:47 p.m., the **ERIK-PC** converted VB into 403,046 lines of C#. Again, the conversion was dedicated to a project titled WebApplication.

45. On January 19, 2011, at 2:10 p.m., a conversion of 1,517 lines into C# was recorded. The vb project is entitled "NotifyService_Temp."

46. Consequently, the total number of C# lines created by **ERIK-PC** number 471,230. All such conversions were the product of the illegal usage of plaintiff's software.

47. Still another computer was found to have engaged in illegal usage. This machine is entitled **ERIK-332FEDC332**. On February 16, 2012, at 7:33 p.m.,

4827-5171-8934.1

11

COMPLAINT

plaintiff recorded that the user of this computer affirmed the EULA and installed the software.

48. Also on February 16, at 8:24 p.m., we find illegal registration has taken place in that the user introduced the same false key as above into the Trial version. The Public IP is 75.71.77.120; the Private IP is 192.168.122.40. The Registration Name indicates Scott Daniel; the Registration email is scott.daniel@alere.com; and the Registration Organization is Alere. All of this information is provided by the user. The owner appears to be Erik Frelund.

49. On February 16, 2012, at 10:15 p.m., plaintiff recorded a large conversion on this machine. The user had illegally converted VB into 375,123 lines of C#.

50. Therefore, as mentioned, the total of all lines illegally converted amounts to 847,870. To place this number of C# lines in perspective, it is said that the number of C# lines is roughly equivalent to 2% if the same were in text. The equivalence approximates 16,940 pages of text. Or, if the average book consists of 200 pages, it would require more than 80 books piled atop one another to equal the number of lines converted. The books compiled could be the start of a substantial library.

51. In summary, plaintiff has documented that four computers gained unauthorized access to its program. Two of the computers, **CorpLegal_1** and **ATLRMDSTAGING1** share the same Public IP address of 65.241.51.2, but are on

separate Private networks at 10.80.33.37 and 192.168.76.94, respectively. The other computers have different Public IPs. Defendant Megan Cook is the first person to gain unauthorized access by use of a fraudulent key. Erik Frelund used that key on the same day as Ms. Cook. Defendants Frelund and Scott Daniel have been central to most of the illegal conversions. In all instances, Alere and its subsidiary are the owners/operators of the computers in question.

**FIRST CLAIM FOR RELIEF**: *Violation of 17 U.S.C. 106(1) & 501, et seq., Copyright Infringement (Against all Defendants)*

52. Plaintiff incorporates by reference paragraphs 1 through 51 as if the same were set forth fully herein.

53. Plaintiff is informed and believes and thereon alleges that the computers involved in this illegal conversion were under the care, custody and control of Defendants at all times. The users, Megan Cook, Erik Frelund and Scott Daniel, directed the false key at Plaintiff's servers in California, bypassed the legitimate code issued to purchasers, gained unauthorized access to the copyrighted material, reproduced Plaintiff's program, adapted and created derivative works beneficial to their employer.

54. Assuming that the average programmer earns approximately $100.00 per hour doing conversion work, the saved costs and expenses avoided by Defendants as the result of unauthorized access, copying and usage amount to approximately $847,000.00.

4827-5171-8934.1

13

COMPLAINT

55. Plaintiff alleges that the full amount of Actual Damages, including profit attributable to the infringement, is unknown to Plaintiff at this time, but accordingly to proof at time of trial. Plaintiff does allege that Statutory Damages are at least $150,000.00. The acts of Defendants, and each of them, involve the use of a fraudulent code in order to bypass Plaintiff's genuine codes issued to legitimate purchasers. The infringers knew or had reason to know they were violating plaintiff's Exclusive Rights under the Copyright Act (At *17 U.S.C. §106(1-6)*). Accordingly, then, the acts complained of were willful and deliberate and qualify for the maximum allowed by law. (At *17 U.S.C. §504(c)(2)*).

**SECOND CLAIM FOR RELIEF:** *Vicarious Copyright Infringement.*

56. Plaintiff incorporates by reference paragraphs 1 through 55, inclusive, as if the same were set forth fully herein.

57. Plaintiff is informed and believes and thereon alleges that at all times relevant to the action complained of herein, Alere, had the right and ability to oversee, govern, control and direct its employees actions, including, but not limited to, causing the cessation of adverse conduct in which its employees were engaged. Yet, despite this ability, Defendants failed and continued to fail to enforce rules of conduct upon its employees, which led to the massive number of lines wrongfully converted. In particular, the Defendants failed to take decisive action to prevent continuing unauthorized access, copying and adaptation of Plaintiff's copyrighted software.

58. Plaintiff further alleges that as a proximate result of Defendants' conduct Defendants have profited in an amount and in a manner that would not have taken place, but for the purloining of Plaintiff's copyrighted software by its employees. Accordingly, Defendants have gained a direct financial benefit to which they are not entitled.

59. Under the circumstances outlined above, Defendants are liable to Plaintiff for Statutory Damages as a willful vicarious copyright infringer in the amount of $150,000.00. Defendants are also liable for Actual Damages in an amount unknown at this time, but according to proof at time of trial.

**THIRD CLAIM FOR RELIEF**: *Contributory Copyright Infringement.*

60. Plaintiff incorporates by reference paragraphs 1 through 59, inclusive, as if the same were set forth fully herein.

61. By virtue of their position as employer, Defendants knew or had reason to know that their employees, Cook, Frelund and Daniel, had gained unauthorized access to Plaintiff's copyrighted programs and was using same for the benefit of Alere and Matria by copying and adapting the accessed copyrighted material, which they knew violated Plaintiff's Exclusive Rights of copyright. The direct infringer's knowledge is inferred from their use of a fraudulent code to unlock the software to unlimited use without the knowledge or consent of Plaintiff.

62. Furthermore, Plaintiff is informed and believes that Defendants aided and abetted the actions of its employees and materially contributed therein by

supplying the data and equipment necessary to encourage, urge and persuade, and induce the usage of Plaintiff's intellectual property, in particular, by supplying computers, a router and a virtual private network through which each and every instance of infringement alleged herein has traveled and been directed to Plaintiff's software.

63. Defendants, and each of them, are liable to Plaintiff by reason of the employer/employee relationship existing between Alere/Matria and the individual defendants for Actual Damages of a sum unknown at this time, but for all profits attributable to the infringements, according to proof at the time of trial. In the alternative, Defendants are liable for Statutory Damages of $150,000.00, as and for the willful and intentional infringement and unauthorized access, copying and usage of Plaintiff's copyrighted programs.

**FOURTH CLAIM FOR RELIEF**: *Violation of the Digital Millennium Copyright Act (17 U.S.C. §1201(a).)*

64. Plaintiff repeats and re-alleges paragraphs 1 through 63, as if the same were set forth fully herein.

65. At all times mentioned herein, Plaintiff has in force a 25 digit alphanumeric code designed to control access to his copyrighted software. It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement (EULA) and pays the standard market fee that access to the licensed product is permitted for an unlimited time. When adherence is satisfied

Plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate code enabling access to the copyrighted programs.

66. The code is intended as a technological measure for the purpose of protecting its proprietary program. To gain access requires knowledge of the 25 digits issued by Plaintiff. It is intended to exclude those who seek to circumvent the code and gain unauthorized access.

67. Defendants circumvented this technological access-control measure to obtain unlicensed access to the Copyrighted Software.

68. The true number of acts of circumvention is unknown at this time, but Plaintiff is informed and believes and thereon alleges that at least 10 occasions above occurred.

69. As a consequence of Defendants' unlawful and unauthorized circumvention of Plaintiff's measures, Plaintiff has sustained damages as previously set forth herein.

70. The use of circumvention device to gain access is an intentional and knowledgeable act by the Defendants. It is therefore willful and subjects Defendants' liable for the maximum allowed for Statutory Damages per act of circumvention or $2,500.00 on 10 occasions for a total of $25,000.00. Alternatively, Plaintiff is entitled to Actual Damages for profits attributable to the acts of circumvention per 17 U.S.C. §1203(c)(2), according to proof at time of trial. Said damages are *in addition* to that awarded for copyright infringement.

4827-5171-8934.1

17

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court issue the following:

A.  Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefiting from Plaintiff's copyrighted application software identified above without the express written approval of Plaintiff or his delegate;

B.  Defendants be ordered to identify, preserve, set aside and retain any and all source code used by them in the infringement alleged above pursuant to Federal Rule of Civil Procedure 34, which includes, but is not limited to:

(i)  All electronically stored information which contains any portion of Plaintiff's copyrighted program;

(ii)  All writings as defined in Federal Rule of Evidence 1001, which refer to or mention in any manner Plaintiff's program, except to those items based on privilege.

C.  Pay Plaintiff all damages sustained by him as the result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at Plaintiff's expense. In particular, Plaintiff demands compensation of at least $150,000.00 as and for Statutory Damages under the Copyright Act or Actual Damages for profits attributable to the infringement, both direct and indirect, according to law.

D.  Plaintiff demands at least $25,000.00 for violation of the applicable

section of the Digital Millennium Copyright Act, §1201(a), et seq., over and above those damages recited under the Copyright Act of 1976;

    E.    Trial by jury.

    F.    All costs of litigation cost of suit, reasonable attorney fees and interest at legal rates.

    G.    Such other and further relief as the Court deems just under the circumstances.

Dated: November 1, 2013

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Donald M. Gindy
Attorneys for Plaintiff
VBConversions LLC